1    <u>COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983</u>

2

3    Name __John-charles, Curtis_____ m._____

FILED

NOV 1 4 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

4         (Last)          (First)          (Initial)

5    Prisoner Number __T-56703_____

6    Institutional Address __CTF-Soledad, P.O. Box 689; HWY 101 N.__

7    __Soledad, Ca. 93960-0689_____

8    =================================================

9         UNITED STATES DISTRICT COURT    **E-filing**
         NORTHERN DISTRICT OF CALIFORNIA

10

11   __Curtis M. John-charles_____
     (Enter the full name of plaintiff in this action.)

**CV  07      5786**

12             vs.

Case No. _____
(To be provided by the clerk of court)

13   __E. Abanico ; L. Rayesa ; Ben__

14   __CWERY ; A. Padilla ; K. Lynch ;__

15   __L. Rodriguez ; J. Nabor ; R.__

16   __SHAW ; I. GUERRA ; Et. AL.__
     (Enter the full name of the defendant(s) in this action)

**PJH**

**(PR)**

**COMPLAINT UNDER THE
CIVIL RIGHTS ACT,
42 U.S.C §§ 1983**

17

18   *[All questions on this complaint form must be answered in order for your action to proceed..]*

19   I.    <u>Exhaustion of Administrative Remedies</u>

20         [**Note:** You must exhaust your administrative remedies before your claim can go

21         forward.  The court will dismiss any unexhausted claims.]

22         A.    Place of present confinement __CTF-Soledad__

23         B.    Is there a grievance procedure in this institution?

24               YES (X)    NO ( )

25         C.    Did you present the facts in your complaint for review through the grievance

26               procedure?

27               YES (X)    NO ( )

28         D.    If your answer is YES, list the appeal number and the date and result of the appeal at

COMPLAINT                          - 1 -

each level of review. If you did not pursue a certain level of appeal, explain why.

1. Informal appeal __Appeal Submitted    9/1/06 (Log # C-06-03019)__

__Informal level by passed.__

2. First formal level __Partially Granted, at the First level after__

__review and return on 1/16/07. Relief denied as to all basis__

__of claims presented herein on 1/28/07.__

3. Second formal level __Partially Granted at the Second level of__

__review on 3/1/07. Relief denied as to all issues forming the__

__basis of these claims herein on 3/5/07.__

4. Third formal level __Partially Granted at third level of review on__

__6/1/07 (IAB #: 0611432) Stating: "Modification of the__

__decision reached by the institution is warranted!."__

E.  Is the last level to which you appealed the highest level of appeal available to you?

   YES (X)    NO ( )

F.  If you did not present your claim for review through the grievance procedure, explain

why. __N/A__

II.  Parties

A.  Write your name and your present address. Do the same for additional plaintiffs, if any.

__Curtis M. John-Charles, CDC # T-56703, Central Facility, P.O. Box 689,__

__Hwy 101 N., Soledad, Ca. 93960__

B.  Write the full name of each defendant, his or her official position, and his or her place of

   employment.

__E. Abanico, Correctional Officer (C/O); L. Kayasa, C/O; K. Lynch, C/O;__

__J. Nabor, C/O; L. Rodriguez, C/O; G. Lavelle, C/O; K. Gomez, C/O; R. Shaw,__
__C/O; B. Miller, C/O; T. Taylor, C/O; J. De La Cruz, C/O; R. Balicata, C/O;__

COMPLAINT                    - 2 -

1  N. Garrett, C/O; P.A. Evans, Sgt.; P. Ware, Sgt.; M. Miranda, Sgt.; M. Dyer, Sgt.;

2  C. Elliot, Sgt.; A.R. Corona, Sgt.; A Padilla, Lt.; Brown, CCI; B. Villalobos,

3  CCI; O.J. Carnezzo, CCII; I. Guerra, Cpt.; P. G. Dennis, Appeals Coor.; A. Aboytes,

(Please see attached sheet.)

III.    Statement of Claim

State here as briefly as possible the facts of your case. Be sure to describe how each

defendant is involved and to include dates, when possible. Do not give any legal arguments or cite any

cases or statutes. If you have more than one claim, each claim should be set forth in a separate

numbered paragraph.

1. Plaintiff is informed and believes, and thereon alleges, that due to

plaintiff filings of numerous inmate appeals and staff complaints;

in particular, for the Central Facility main corridor correctional

officers (hereinafter YO's) racial profiling of African-American

inmates for wearing their wave-caps within the corridor.[1] where

other inmates (non-African American), who purchase head gear

(i.e. hats, beanies, etc.) were not subject to this discrimination.

That changed said policy; thereby, allowing wave-caps to be

permitted whenever inmate head gear was allowed, was

perceive with hostility by the corridor staff. Thereby, creating

an atmosphere of reprisal, harassment, and retaliatory actions

directed at the plaintiff, that culminated in the sexual assaults

perpetrated by Defendants E. Abanico & L. Payasa. 2. On 8/18/06,

(Cont. Next page.)

IV.    Relief

Your complaint cannot go forward unless you request specific relief. State briefly exactly what

you want the court to do for you. Make no legal arguments; cite no cases or statutes.

Injunctive Relief: 1. There is no adequate remedy at law to pro-

tect plaintiff from said retaliation, and without the equitable

relief sought (i.e. Transfer and/or compensatory damages) he is

susceptible to great and irreparable injury;

(Cont. on page 28)

COMPLAINT                          - 3 -

1. Wave-caps (and/or Do-rags) are worn exclusively by African-

American inmates within CTF-Soledad, central Facility.

statement of claims continues:

1  Defendants sergeant Padilla (who has since been promoted to
2  Lieutenant), yos k. Lynch and E. Abanico were working the
3  main corridor in front of C-wing. As plaintiff was returning
4  from the even meal, through the main corridor; he was directed
5  by defendant Abanico to get up against the wall, as he tried to
6  walk pass. knowing that a clothed body search would ensue
7  (i.e. Pat down), plaintiff waited in the search (prone) position, as
8  defendant Lynch was still searching another inmate prior to
9  plaintiff's arrival. Defendant Abanico, even before he began to
10 search the plaintiff, kept ordering him to back his legs up. This
11 was done until plaintiff finally came to the point where his
12 body was being supported only by his hands laying flat, and
13 his forehead up against the wall. To which, plaintiff thought
14 was excessive, because even the inmate who was being searched
15 next to him was not being forced into this position;

16      3. By now, defendant Abanico had grabbed the back of
17 plaintiff's shirt, balled it in his fist, then order the plaintiff to
18 back up some more. Plaintiff stated that he could not move
19 any further, and that he was already in the 'Pat down'
20 position. defendant Abanico then proceeded to pat down (search)
21 the plaintiff, and it was at this time that plaintiff fully
22 realized why he was being placed into such an awkward
23 position. Defendant Abanico begin to grab and massage
24 plaintiff's penis and scrotum in a totally inappropriate
25 manner; all the while attempting to place his arm inbetween
26 plaintiff's gluteus. Plaintiff could not move, nor offer any
27 resistance to this very assault on his person as it
28 was happening. All the plaintiff could and did do was

1 offer a token of verbal refusal to this officer by stating: "Man,
2 what the hell are you doing!" "I'm not one of these gay inmates;"

3     4. Ignoring plaintiff, defendant Abanico grabbed his shirt
4 tighter, pulling the plaintiff towards him more, and continued
5 to go up and down plaintiff's legs, grabbing and massaging
6 plaintiffs' penis and scrotum each time. Defendant Abanico then
7 proceeded to yank plaintiff's sweat pants down half way down
8 his legs, to get at the sweat shorts he was wearing underneath;
9 which, contained plaintiff's wallet, and identification cards;

10     5. After handing plaintiff's wallet over to defendant Lynch,
11 not bothering with his identification cards; defendant Lynch
12 sarcastically referred to plaintiff as a 'pack rat' due to all
13 of the pieces of paper (which were names, phone numbers,
14 and addresses of friends and family members) that was in the
15 wallet. Defendant Abanico continued to fondle plaintiff in a
16 pretense of a search, while defendants Padilla and Lynch
17 looked on knowingly, and amuse at plaintiff's predicament;

18     6. After experiencing one humiliating assault after
19 another, at the hands of defendant Abanico; c-wing was called
20 for chow release. Instead of allowing plaintiff to gather
21 himself and leave without further incident, he was order up
22 against the wall on the opposite side of the corridor. And
23 once the corridor was empty again of inmates, plaintiff was
24 search again by defendant Abanico; even though, this defen-
25 dant had search every pocket and/or area on the plaintiffs
26 body several times, grabbing and massaging plaintiffs
27 penis and scrotum on each pass. At the same time,
28 defendant Lynch was throwing pieces of paper contain-

1  ing plaintiff's family & friends information indiscriminately
2  on the floor; inwhich, plaintiff was not allowed to retrieve;

3      7. After assaulting plaintiff several times, defendant
4  Abanico tried to place his forearm across plaintiffs'
5  shoulder in a jester that mimic an intimate relationship
6  between the two. Plaintiff told him that he was not a resting
7  post, and for him to get his hands off of him. Smiling
8  at plaintiff, defendant Abanico proceeded to remove plaintiffs'
9  eating utensils from a clear plastic bag, and began to rub
10  them with the soiled glooves that he was wearing in a very
11  overt sexual manner (i.e. simulating masturbation), before
12  handing them back to the plaintiff;

13      8. Plaintiff was finally allowed to leave after this
14  humiliating ordeal, and filed a inmate appeal/staff complaint
15  immediately; asking that these three (3) defendants (i.e.
16  Padilla, Lynch, and Abanico) be brought up on charges for
17  the sexual assault perpetrated against plaintiff. Plaintiff
18  also informed (via letter(s)) defendants Matthew B. Thomas
19  (ombudsman), Ben Curry (Warden-CTF Soledad), James
20  'Jim' Tilton (Director of Corrections), A.P. Keane (secre-
21  tary of Director of Corrections) of the crime, the sur-
22  rounding harassment, and asked that they investigate and
23  intercede on his behalf. The case was given to the
24  Investigate & security Unit (hereinafter ISU) for investi-
25  gation;

26      9. Plaintiff is informed and believes, and thereon
27  alleges, that defendants Padilla, Lynch, and Abanico; whom
28  was aware of the many successful inmate appeals that the

plaintiff had litigated against staff and policy rules, set about to harass and retaliate against the plaintiff for these acts. Plaintiff is further informed and believes, and thereon alleges, that defendants Padilla and Lynch knew of defendant Abanico degrading and criminal behavior, and willfully and deliberately failed to correct or prevent the sexual assault of the plaintiff. The actions of defendants Padilla, Lynch, and Abanico were taken for the purpose of retaliating against plaintiff for his having complained to prison officials about the conduct of these defendants, their fellow officers, and the policies that he successfully challenged at central facility;

10. On 9/1/06, upon proceeding to morning chow, plaintiff was stop and harassed by numerous ISU officers (i.e. the same unit of officers who were supposely looking into plaintiffs sexual assault case.), who were telling the plaintiff that he could not wear his wave cap in the corridor; even though, several other inmates were allowed to proceed unchallenged. Plaintiff informed these officers that he had successfully file a grievance on this matter, and produce a chrono (signed by the Warden) in support of his statement. The ISU sergeant stated " I was not informed by the Warden of this policy."; took plaintiff's chrono, went to confer with an ISU Lieutenant; then told the plaintiff that a copy of his chrono needed to be made. As these two officers left [plaintiff] in the company of the remaining ISU officers; he was made distinctly aware through indirect comments, that he should get use to this. This the plaintiff took as being harassed by correctional staff;

11. On, 9/6/06, plaintiff was confronted again by defendants Padilla and Abanico, who were agitated by the initial sexual assault complaint filed by the plaintiff. They were very disrespect in tone and words use to describe how they felt about plaintiffs complaint, then order him up against the wall to be searched. Defendant Abanico grabbed and massage plaintiffs penis and scrotum as he proceeded to do his pat down. In leaving the area plaintiff turn and stated: "I will not keep allowing your officer to keep assaulting me, and when you guys put a stop to his (indicating defendant Abanico) perverted and deviant behavior is when I will stop my complaints." These two defendants (Padilla & Abanico) then chased plaintiff down the main corridor real aggressively, telling plaintiff that he "better shut your mouth!" Plaintiff was order to stop again, where he was order up against the wall in the search position, and was sexually assaulted by defendant Abanico again. Plaintiff told defendant Padilla: "you know what this guy is doing! And ya'll just searched me, so what is this about?" Defendant Padilla watching the search, told plaintiff that they were officers, and they could search him when-ever and as much as they wanted. Plaintiff began stating that "this is harassment" loud enough to be over heard by anyone in the area; when defendant Padilla said, "you need to shut your mouth when officers are talking to you before I place you in the hole (ad. seg.) For 'inciting' (i.e. a riot and/or major disturbance), because what I put on paper would stick;"

12. While defendant Padilla was verbally threatening the plaintiff, defendant Abanico situated himself behind the plaintiff,

— 8 —

1  grabbing hold of his shirt, and was simply waiting for defen-
2  dant Padilla to give the take down signal to him. Plaintiff
3  fearing for his safety became very quiet; wherein, defendant Padilla
4  becoming even more irate by plaintiffs silence (i.e. suspecting
5  that the plaintiff was ignoring him), started yelling " Do you
6  hear me inmate, do you understand! " repeatedly. Plaintiff, who
7  acknowledge that he did, was released by defendant Abanico,
8  after receiving an approving nod from defendant Padilla; and
9  told to " get the hell out of here!;"

10      13. Plaintiff was forced to bring this incident to the
11  attention of defendants M. B. Thomas (ombudsman), B. Curry
12  (warden-CTF-Soledad), J. Tilton (Dir. of Corrections), and A.P.
13  kane (Secretary of Dir. of Corrections) via correspondence.
14  Because of the actions taken against him by defendants
15  P.G. Dennis and A. Aboytes ( Appeals coordinators at CTF-
16  Central); whom continuous effort to circumvent plaintiffs
17  appeals & staff complaints through the screening out process,
18  routinely confiscated said appeals & staff complaints, failed
19  to answer plaintiffs appeals & staff complaints within the
20  time lines articulated within departmental rules and regu-
21  lations; impeded and/or stop any chances of plaintiffs
22  problems of reaching prison officials with the authority to
23  stop it;

24      14. Plaintiff is informed and believes, and thereon alleges,
25  that defendants P.G. Dennis and A. Aboytes were aware of the
26  facts of plaintiffs sexual assault complaint through the
27  screening process; as well as, the harassment that plaintiff
28  was experiencing from various correctional officers due to these

1  get his own representation. Concluding, plaintiff made it clear
2  that he would not be refusing any searches; yet, he would not
3  allow defendant Abenico to search and/or put his hand on him
4  in a sexual manner again;

5      16. On, 11/18/06, I was finally released from Ad. seg., and
6  as plaintiff was waiting to be returned to central facility, de-
7  fendant Padilla came to interview plaintiff concerning a inmate
8  appeal that he filed for his immediate release from Ad. seg.
9  Defendant Padilla, who was named in several of plaintiff's
10  complaints, wanted him to drop the aforementioned appeal.
11  Because plaintiff was being released from Ad. seg. on this date
12  any way. plaintiff stated " I will not, because I should not have
13  been placed in Ad. seg. from the beginning. " To which, defen-
14  dant Padilla replied " you were placed in ad. seg. so other officers
15  wouldn't hurt you. " Plaintiff continue to refuse to withdraw his
16  complaint, defendant Padilla became irate an stated that it would be
17  denied for failing to assist with the investigation of the appeal
18  and left;

19      17. On, 11/23/06, as plaintiff was heading to the yard; being
20  that he was just released from Ad. seg. recently, and staff had
21  misplaced (lost) his Red Privileged identification card, he was
22  given a signed piece of paper from correctional counsel II -
23  defendant D.J. Carvazzo stating that Plaintiff indeed have a
24  privilege (red) card and should be allowed yard. and/or those
25  privileges that are associated with said card. As plaintiff came
26  to the yard processing station, he handed his Green I.d., along
27  with the note to defendant Yo J. Nabor. Plaintiff was order
28  to step out of the processing line, and his documents were

1  given to defendant Abanico, who appeared to thoroughly
2  examine both for several minutes. Acting like he was becoming
3  disgusted with plaintiffs identifications, defendant Abanico made
4  a jester as if he was about to drop them in a nearby tresh can,
5  pulled them back, smile at the plaintiff like he was just playing
6  around; then acting like he was about to hand plaintiff back
7  his Identifications, drop them on the floor as plaintiff was
8  extending his hand for them. Plaintiff had to retrieve his
9  identifications off of the floor where defendant Abanico left them;

10
11  18. Upon returning from the yard plaintiff went to the Unit
12  sergeant (sgt. M. Dyer), along with a couple of witnesses,
13  who saw the whole situation, and reported it to him. sgt.
14  Dyer, noted this incident and informed plaintiff that he would
    handle it;

15  19. Plaintiff is informed and believes, and thereon alleges,
16  that defendant Yo J. Nabor was aware of the on-going
17  situation; inwhich defendant Abanico initiated by sexually
18  assaulting plaintiff, and that by passing plaintiffs infor-
19  mation to him, actively and willingly participated in this
20  retalatory harassment that defendant Abanico was engaged in,
21  by doing so, defendant Nabor caused plaintiff to experience
22  unwanton pain & suffering;

23  20. On, 1/18/07, after plaintiff was ordered to the East-
24  gate, as he was exiting from the pill call line; Fore, all west
25  bound traffic was brought to a halt at that time. Plaintiff
26  was approached and harassed by defendant Yo L. Rodriguez
27  (Y-wing corridor officer), who ordered plaintiff to take off his
28  jacket and get up against the wall (in the search position).

1  Defendant L. Rodriguez then stated: "I'm tired of seeing you
2  down here, you are one of my targets, as everytime I see you
3  I'm gonna stop you." Now at this time Yo Hernandez (2-wing
4  trash corridor officer) walked over and tried to inform defen-
5  dant Rodriguez that plaintiff was in the pill line and that he
6  was told to take it to the Eastgate. Defendant Rodriguez responded,
7  "I don't care, he has to be up to something, besides I don't
8  like him anyway." This was being said as defendant Rodriguez
9  roughly patted down the plaintiff, and when he saw that he
10  could not provoke a response from the plaintiff, made several
11  more disrespectful comments, and then order the plaintiff to "get
12  out of here!;"

13      21. Plaintiff is informed and believes, and thereon alleges, that
14  defendant Yo L. Rodriguez was aware of the on-going reprisal &
15  harassment that the plaintiff was being subjected to by his
16  co-workers for the many complaints that plaintiff had filed,
17  joined and actively participated in the retaliatory threats and
18  misconduct that were being engaged by his co-workers. Defen-
19  dant Rodriguez actions cause plaintiff to experience extreme
20  fear, anxiety and emotional distress.

21      22. On, 1/25/07, while plaintiff was heading to the legal
22  library, he was confronted again by defendants Abanico, who
23  plaintiff refused to allow to search him. Defendant Abanico
24  stated: "are you refusing a direct order"; in which, plaintiff
25  responded "no. I have no problem with your co-worker
26  (Defendant Nabor) or any other staff members searching me."
27  Plaintiff then requested that defendants Abanico, or Nabor (who
28  was present) to get a sergeant, Lieutenant, or captain to help

1  resolve this matter;

2     23. Sergeant Miranda was called over and as he was approach-
3  ing, defendant Abanico began yelling that "this guy is refusing
4  to allow me to pat him down!" Plaintiff informed Sgt. Miranda
5  that he did not have a problem with being search; plaintiff
6  was only refusing to allow defendant Abanico to search him, being
7  that he had a on-going complaint(s) filed against him for sexual
8  assaults during pat downs. Sgt. Miranda seem to ponder this for
9  a second, then stated: "Oh yeah!", and instructed defendant
10  Nabor to conduct the search, and left the scene;

11     24. As plaintiff was being searched by defendant Nabor,
12  defendant Abanico search plaintiffs legal property that he was
13  taking to the law library. Defendant Abanico began to clearly
14  read plaintiffs legal documents which is against departmental
15  regulations, and even had the audacity to ask plaintiff what
16  certain legal papers were for. To which, plaintiff stated: "None
17  of your business, and you really need to stop reading my legal
18  material." Defendant Abanico then grabbed plaintiff eye
19  glass case which contained plaintiff eye glasses, and started
20  to bend them back and forth; all the while smiling at the plaintiff
21  in a (what the plaintiff can only describe as a sexual, pouting,
22  kind of smile), saying "Sie, we can all get along." through this
23  action, defendant Abanico broke my eye glasses, handed them
24  back to plaintiff, and allowed him to leave;

25     25. Plaintiff immediately sought out Sgt. M. Miranda,
26  telling him: "that weirdo just broke my glasses," as plaintiff
27  was extremely agitated and frustrated by the continuous
28  harassment that he was being made to endure, and it showed in

—14—

1 tone of voice. Sgt. M. Miranda was under the impression that the
2 plaintiff was blaming and/or name calling him for the incident,
3 and ordered plaintiff to come back towards him and stated: "the
4 name calling is not necessary as I am not the one who assaulted
5 you," pointing towards defendant Abanico, he continued "he is!"
6 understanding that his emotional state would only exasperate the
7 situation, plaintiff listen to Sgt. Miranda comments, and was
8 allowed to leave;'

9    26. On the morning of 2/15/07, defendants Abanico and Nabor
10 conspired to give defendant Abanico another opportunity to
11 sexually assault plaintiff. As plaintiff was attempting to report to
12 the Unit 3 office where he was schedule for a program review with the
13 Unit classification committee (hereinafter UCC). Plaintiff had been
14 attempting to get a reduction in his custody level; as well as, a
15 transfer to alleviate all of the retaliatory reactions, and harass-
16 ment that he was experiencing whenever he was in the main
17 corridor.

18    27. When defendant J. Nabor, who had been asked to do a
19 general search of the plaintiff to allow him access of the Unit
20 3 office for the purpose of his scheduled committee; called over
21 defendant Abanico who attempted to do the search himself. After
22 plaintiff refused to allow defendant Abanico to touch him, a argu-
23 ment ensued, then escalated; wherein, defendant Nabor finally
24 searched the plaintiff. Upon finding old ducats on plaintiff's person;
25 which plaintiff informed both defendants that they would be used
26 as exhibits in his hearing. Defendants Abanico and Nabor insisted
27 that they were contraband, and tried to confiscate them. Plaintiff
28 who notice defendants G. Lavelle, who entered the door way of

1  her wing and stood watching what was taking place; along with
2  defendant K. Gomez, who was assigned to F wing, step out of
3  her Unit after hearing the loudness of the argument that the
4  plaintiff and defendants Abanico & Nabor were engaged in.
5  Plaintiff plead with both of these defendants (i.e. Lavelle &
6  Gomez) to contact a Sergeant, Lieutenant, or Captain; in which,
7  defendant Gomez just looked and stepped back into her wing
8  shutting the door. Defendant Lavelle remained standing in
9  the door way of E-wing watching. The Plaintiff then plead
10 with defendants Abanico, Nabor, and Lavelle to contact a
11 Sergeant, Lieutenant, or Captain to resolve this matter. Defen-
12 dant Abanico, smiling at the plaintiff, lean in and whispered
13 "I will not be contacting anyone;"

14      28. Plaintiff is informed and believes, and thereon alleges,
15 that defendants G. Lavelle and K. Gomez was aware of the on-
16 going harassment and Retaliatory actions of defendants
17 Abanico and Nabor, and willfully and deliberately failed to
18 correct or prevent the Retaliatory conduct of defendants
19 Abanico and Nabor. Plaintiff is further informed and believes, and
20 thereon alleges, that defendant G. Lavelle, who had been named
21 personally in complaints filed by the plaintiff and was an active
22 participate in the on-going harassment of plaintiff in violation
23 of his 8th Amendment Rights.

24      29. As defendant Nabor was opening the Unit 3 office
25 door, plaintiff saw defendant Captain I. Guerra walking
26 through the office, and called out for her assistance.  As she
27 was approaching they're position, plaintiff and defendant
28 Nabor were trying to explain the situation to her at the

1  same time; when plaintiff was instructed by defendant Guerra to not
2  speak over her officer, and after he speaks she would listen to him.
3  when it was the plaintiff turn to speak, he informed defendant
4  Guerra of the situation (i.e. how defendants Nabor was asked to do
5  a routine search of the plaintiff so he could go in to his UCC hearing;
6  instead, he called over defendant Abanico to do the search. Even
7  though, he (defendant Nabor) was aware of the sexual assaults per-
8  petrated by defendant Abanico.) Defendant Guerra did not respond,
9  she just took plaintiff's ducats from defendant Abanico (who was
10  refusing to give them back to the plaintiff.) said that she would make
11  copies for plaintiff; then asked both officers had plaintiff been searched,
12  which they both answered "yes", and plaintiff stated "I've been
13  searched twice." Plaintiff was allowed entrance into the Unit 5 office,
14  and defendant Guerra went to make copies of plaintiff's ducats;

15      30. Now as plaintiff was awaiting his turn to be seen by
16  UCC, and for defendant Guerra to finish making his copies; defendant
17  Guerra, in a totally disrespectful way, stated: "you are a problem
18  child!" plaintiff replied that he was not 'her child', nor was he
19  a problem; especially, when he was just following the rules and
20  regulations. Plaintiff then held up the CDCR Title 15 for her to see.
21  Defendant Guerra became irate stating loudly "I'm not going to have
22  an argument with you" or "I'm not gonna argue with you."

23      31. At plaintiff's UCC hearing which was conducted by
24  defendants Guerra, CCI Brown, CCI B. Villelobos, and later joined by
25  defendant CCII D.J. Carnazzo; plaintiff attempted to bring this to
26  the committees attention the on-going problems of harassment by
27  various officers, along with the sexual assaults, within the main
28  corridor. In supporting his requests for an reduction in custody,

1  and a transfer out of Central Facility, plaintiff submitted
2  documents which chronicled these events, and the prison officials
3  he had contacted. To emphasis this point, plaintiff spoke of the
4  incident involving defendants Abanico and Nabor that had just
5  occured, and that defendant Guerra had witness right before
6  his hearing. Defendant Guerra took one look at these sup-
7  porting documents, stated: "This does not have any thing to do
8  with this hearing!", and threw the documents back at the
9  plaintiff. Plaintiff responded that "they did", because he was
10 seeking a custody reduction and transfer (UCC matters) to
11 alleviate the problems he was having with defendant
12 Abanico. Plaintiff presented seperate documents for these
13 requests, and after a brief look defendant Guerra stated "I
14 have already denied this request.", stopped the proceedings
15 to go retrieve defendant Carvazzo; on her way out stating
16 "I dont know why this problem wont accept no!;"

17   32. Upon defendant Guerra return with defendant CCII
18 D.J. Carvazzo, who stated to the committee that he had
19 just denied this request in a seperate 602 (*Log num:
20 CTF-S-07-00306) that was at the third level of review.
21 Defendant Guerra then threw these documents back at plaintiff
22 and stated "I will not place none of these documents in
23 your central files as you have requested, and you can add or
24 use these documents towards your appeal on this program
25 review if you decide to appeal and/or towards the appeal
26 that defendant D.J. Carvazzo just denied!;"

27   33. After plaintiff's UCC hearing came to an end, while
28 he was waiting to be let in his assigned housing unit

1  (E-Wing); defendant Abanico, who was then posted at the
2  metal detector at the west gate (i.e. down the corridor), with
3  defendant R. Shaw, after noticing plaintiff waiting, approached
4  him sarcastically saying " would you like for me to let you
5  in". Smiling the hold time. When defendant Abanico saw that
6  he could not provoke an response from the plaintiff, he
7  went on to say: " I like you dark ones, yaw are so fiesty ! "
8  Defendant R. Shaw was standing no more than five (5) feet
9  away when these unprofessional, sexual, and racist statement
10 was made; yet, did not do anything to correct it;

11     34. Plaintiff is informed and believes, and thereon alleges
12 that defendants Cpt. I. Guerra, CCII D.J. Carvazzo, and C/O R.
13 Shaw were already biased against plaintiff for him having
14 successfully filing an inmate appeal of CTF- head gear policy,
15 and other appeals naming within them each of these defen-
16 dants; all of whom were aware of plaintiffs' on-going situa-
17 tion with defendant Abanico, and the constant harassment that
18 they (themselves) had witnessed, and willfully and deliber-
19 ately failed to correct or prevent the retaliatory conduct of
20 defendant Abanico. Plaintiff further is informed, and believes,
21 and thereon alleges that defendants Cpt. I. Guerra, CCII D.J.
22 Carvazzo, and C/O R. Shaw actively participated in this
23 retaliatory conduct, and harassment of the plaintiff, and in
24 the case of defendants I. Guerra & D.J. Carvazzo, use their
25 administrative position to set an atmosphere of disres-
26 pect, and reprisal throughout their subordinates. Throughout
27 their actions and inactions, defendants Guerra, Carvazzo,
28 and Shaw cause the plaintiff unwanton and unnecessary

pain and suffering;

35. On, 2/21/07, plaintiff mailed letters with supporting documents to senators Mike Machado, and Doborah Ortiz; as well to Defendants B. Curry, A.P. Icane, and J. Tilton regarding the constant harassment, reprisal, and unwarranted incidents that plaintiff had been subjected to after filing his sexual assault complaint against defendant Abanico. citing the lack of acknowledgement by prison officials which had made plaintiffs' situation worse, and to request their personal assistance in bringing this matter to a close;

36. On, 3/24/07, during morning yard release, defendant sergeant O. Cox approached the plaintiff and asked for his identification. when plaintiff handed it to him; defendant O. Cox became irate, and began yelling at the plaintiff that he 'jammed' his I.d. into his hand. He then ordered plaintiff up against the wall, and continued to yell in his ear. By now, defendants G. Lavelle, and B. Miller settled on either side of the plaintiff; in effect, surrounding him within a mini-circle. These events were witnessed by two inmates, who went to advise defendant P. Ware of the misconduct taking place. Defendant Ware refused to appear and correct this incident; instead, he advised plaintiffs' witnesses that "they better mind their own business" before he turned and left.

37. Later now this same morning, plaintiff was again harassed by these three (3) defendants (i.e. sgt. O. cox, so's G. Lavelle, and B. Miller); wherein, he was surrounded and asked for his Black (Nike brand 'Air Jordan') tennis shoes. defendant Lavelle stated "you can not have these shoes." Even though, she had (personally) admitted numerous inmates prior to the plaintiff, to the yard who were wearing Black tennis shoes. And allowed several others inmates

wearing black tennis shoes to the yard as plaintiff was
handing over his. This blantant retaliatory act of confis-
cating plaintiff shoes was witnessed by defendants Sgt. Cox
and B. Miller; who did nothing to stop the abuse that the
plaintiff was experiencing.

38. On, 4/18/07, while standing in the door way of
plaintiff's cell, correctional officer Diaz asked plaintiff "why
you do things to have the officers pick on you" and that
"everything is illegal when it comes to you since you like
writing 602's (inmate appeals). He further stated, "we all know
you want a transfer" and that he perceived the plaintiff to
be a "smart man" and "that a smart man will roll with the
program, like everyone else, and stop being a problem."
Though Yo Diaz may have thought this was considerate and/or
good advise; plaintiff perceived it as he is still being targetted
by correctional staff for being a 'problem'; therefore, could be
retaliated against and harassed.

39. On, 4/27/07, plaintiff was confronted again by de-
fendant B. Lavelle, who (this time) confiscated plaintiff's radio
which he left in the day room area while he was on the yard.
Upon plaintiff return he questioned her as to why his radio was
confiscated; fore, it was not against any rules to leave one's
property in the day room at the inmates own risk. When
plaintiff did not get an reply, he asked could he get his
property back; to which, defendant Lavelle stated: "No.....
you can't have your radio!" Plaintiff then asked for a pro-
perty receipt, which she gave him and informed him that his
radio would be sent to R&R (i.e. Recieving & Release). When

1  asked could plaintiff retrieve his radio from R&R, defendant
2  Lavelle stated "No"; To which plaintiff replied "so are you
3  telling me if I want to listen to Music, I have to buy an-
4  other radio?" Defendant Lavelle did not answer this ques-
5  tion;

6
7  40. Plaintiff immediately brought this incident to
   the attention of defendant Sergeant A.R. Corono, who was sitting
8  in the  Yo's Unit office, to correct and/or rectify this act of
9  reprisal by defendant Lavelle, and get my radio back.
10 Because there was clearly no reason for defendant Lavelle
11 to confiscate it beside the blantant harassment and retalia-
12 tory act it was meant to convey. Defendant Sgt. A.R. Corono
13 stated "boz it" and left;

14
15 41. On, 4/30/07, plaintiff spoke to Yo Schramm
   (R&R property officer) in R&R concerning his radio, which
16 was given back.  Yo Schramm informed plaintiff that he
17 was lucky that his radio was not lost, because defendant
18 Lavelle had neglected to fill out the paper work correctly,
19 and just placed plaintiff's radio in a R&R property room.
20 It took  Yo Schramm some time before he found plaintiff
21 radio, and upon giving it back advised plaintiff to stay
22 away from defendant Lavelle;

23
24 42. On, 5/10/07, as plaintiff was proceeding down
   the main corridor to the watch office, for a interview with
25 Lieutenant R. Lopez concerning a complaint that plaintiff
26 had filed on the harassment he was experiencing at the
27 hands of defendant Sgt. D. Cox; when he was stopped by defen-
28 dant L. Rodriguez, who began questioning plaintiff about the

1  nature of his interview with Lt. Lopez. Then stated in a very

2  threatening tone and manner that " you better not be going in there

3  telling on me!" This was said in front of defendant T. Taylor and

4  another correctional officer (name unknown.);

5      43. At the interview with Lt. Lopez, plaintiff was blatantly

6  asked to withdraw and/or sign off on my complaint, because this

7  issue had been resolve. In that, defendant Sgt O. Cox no longer work

8  there, and had been "walked off" facility grounds. It was further

9  revealed to the plaintiff that whenever 'they' catch an officer in a

10  lie (indicating defendant Cox), the department would not tolerate it,

11  and would terminate their employment. And in not having the

12  resources to do follow ups on ex-officers, it would make it easier on

13  every one involved if plaintiff would simply withdraw his com-

14  plaint; as defendant Cox would no longer be a problem;

15      44. Plaintiff refused to withdraw his complaint on these

16  (fabricated) statements by Lt. Lopez (i.e. plaintiff later found out

17  that defendant cox was not terminate as Lt. Lopez lead plaintiff

18  to believe, but transferred to a different facility.), and adamantly

19  that this complaint needed to be addressed as to the department

20  over looking misconduct of its officers;

21      45. As plaintiff was returning from the watch office, and

22  heading back to the law library where he was originally summoned.

23  Plaintiff had to walk pass defendant Rodriquez, in front of Y wing;

24  who again asked plaintiff why he had gone to see Lt. Lopez. To

25  which, plaintiff replied " It was a private matter and none of your

26  business." Defendant Rodriquez clearly became up set by this

27  remark, and threaten " You did tell on me, I am gonna get you

28  tomorrow;"

46. On, 7/20/07, as plaintiff was on his way back from the chow hall after the evening meal, he was stop and search by defendants 90 J. Dela Cruz and 90 R. Balicata. Once this search was completed, plaintiff proceeded not 20 feet; when he was seen by defendant Abanico, who turned to defendant L. Rayasa, and told him to stop & search me. Plaintiff informed defendant L. Rayasa that he just had been searched by his co-workers (defendants J. Dela Cruz and R. Balicta) not 20 feet away from him. Defendant Rayasa look at defendants J. De La Cruz and R. Balicata, who just stood there watching; then to defendant Abanico for approval and direction. In which, defendant Abanico responded by pointing to the wall. Plaintiff then informed defendant Rayasa of the on-going harass- ment that he was experiencing at the hands of defendant Abanico for a sexual assault complaint that plaintiff had filed against him. Then pointing towards defendants De La Cruz and Balicata, plaintiff then informed defendant Rayasa that they had just searched him; who by then was watching and laughing at plaintiff's predicament. Defendant Rayasa looked at his co- workers, then at defendant Abanico, and stated: "Well I did not see them search you." then proceeded to pat plaintiff down while defendant Abanico watched, going through plaintiff's wallet and medication. Defendant Rayasa repeatly grabbed hold of plaintiff's penis and scrotum in a very inappropriate manner, sexually assaulting plaintiff as defendant Abanico looked on approvingly. After defen- dant Abanico handed defendant Rayasa plaintiff's wallet, which he searched again, then allowed plaintiff to leave;

47. Plaintiff immediately went and informed defendant sgt. G. Elliot of the sexual assault that just happen, and the con-

1 tinuous persecution and harassment that he is being forced to
2 endure by defendant Elliot's officers; Defendant G. Elliot then stated
3 "there is nothing that I can do about it" and for plaintiff to "boz
4 it!"

5   48. Plaintiff is informed, and believes, and thereon alleges, that
6 defendants J. De La cruz, R. Baleta, and L. Rayasa were aware of
7 the on-going harassment that plaintiff was experiencing at the
8 hands of defendant Abanico, of the sexual assault perpetrated by
9 defendant Abanico against plaintiff, and actively and intentionally
10 participated in this conduct. Plaintiff further is informed, and
11 believes, and thereon alleges that defendant Rayasa conspired with
12 defendant Abanico to sexually assault plaintiff, when it was
13 clear that defendant Abanico could not do anything perverted and
14 degrading on his own;

15   49. On or about, 8/29/07, plaintiff was returning from chow
16 and as he was walking pass defendant Abanico, who was at
17 him, pointed towards the wall. Plaintiff looked at defen-
18 dant Abanico, and kept on walking. Defendant Abanico started
19 yelling "Sir" get up against the wall"; To which, plaintiff
20 responded "for what? you are not searching me." Defendant
21 Abanico states again for plaintiff to put his hands on the
22 wall. Plaintiff again replies "I would not keep allowing
23 you to sexually assault me.", as he placed his hands on the
24 wall. Plaintiff turns to defendant Yo N. Garrett (who was
25 present at this incident), and lets her know that he does
26 not have a problem with any pat down; only with this
27 officer (defendant Abanico) touching him in any way; that
28 she (herself) could proform the search. Plaintiff's hands

1 were clearly on the wall, as he was speaking from the search
2 position. When defendant Abanico pushed plaintiff in the
3 back, plaintiff; who had to half-spin to tell him to keep
4 his hands off of him. Plaintiff turns again to defendant
5 Garnett, letting her know the situation between defendant
6 Abanico & himself; and plead with her that "we don't need
7 to go through no unnecessary problems, if she would only
8 pat him down." Looking at plaintiff as he had spoken out
9 of turn, stated very sarcastically that she did not pull him
10 over so she would not be searching plaintiff. Plaintiff then
11 informed both of them that they needed to call a sergeant;
12 in which, defendant Garnett stated "I'm not calling anybody."
13 Plaintiff began to raise his voice so that everybody returning
14 from chow could hear him, because he began to fear for his
15 safety at the hands of these two (2) officers; demanding
16 that someone call a sergeant. Defendant Garnett raised her
17 voice telling plaintiff that he needed to shut up, and
18 plaintiff replied that she needed to get a sergeant. Other
19 concerned inmates who was witnessing this incident, begin
20 to stop and asked was everything alright? Plaintiff told
21 them "No!" and could one of them go get a sergeant. One
22 of the two (2) defendants activated their personal alarm, and
23 all the West gate officers began yelling for everybody to get
24 in their wings. At the same time defendant Abanico grabbed
25 plaintiff's right hand, and twisted it behind his back,
26 shoved plaintiff up against the wall, leaned into his right
27 side, and began to fumble with the cuffs on his right waist.
28 defendant Garnett then stepped in grabbing plaintiff's left

1  hand, then twisted it behind his back; all the while plaintiff
2  was not offering any resistence to these officers abuse. Defen-
3  dant Abanico, who was still fumbling with the cuffs on plain-
4  tiff's right waist, became so frustrated that he punched the
5  plaintiff in his right side. Defendant Garrett stated "we got
6  you now. You should have shut your mouth!" spraying saliva
7  all over plaintiffs' face as she spoke. Defendant Abanico
8  finally got the cuffs on, and plaintiff was placed in a waiting
9  cage for almost two (2) hours before he was released back to
10 his unit;

11        50. Plaintiff was forced by this administration and
12 prison officials, i.e., defendants correctional counselors M.G.
13 Aceves, C. Duran, R.B. Brown, B. Villalobos, D.J. Carnazzo,
14 Lieutenants T.G. Jarvis, D. Silva, C. Hanchoch, correctional ser-
15 geants P.A. Evans, G. Elliot, A.R. Corono, M. Dyer, M. Miranda,
16 P. Ware; Facility Captain I. Guerra (who is/was the supervisor of
17 all named correctional officers herein.); As well as, Warden Ben
18 Curry; Chief Deputy Wardens Pat Barker, W. Cohen, and C. Noll;
19 Associate Wardens R. Pope and J. Soares, to endure continuous
20 harassment at the hands of defendant Abanico, and other named
21 defendants for exercising his constitutional rights to appeal and/or
22 challenge institutional policies & decisions, and his basic human
23 rights to not be personally violated. All the named defendants
24 was aware of the serual assault perpetrated against the plain-
25 tiff; and/or was put on notice by personal correspondence, and/or
26 participating in some fashion in plaintiffs various hearing, or
27 incidents;

28        51. Plaintiff is informed and believes, and thereon alleges,

that all named defendants cited herein is responsible in some
manner or to some degree, for some and/or all the deprivations
that the plaintiff was made to suffer, through their actions or
inactions, failed to provide the necessary safe guards in order to
protect plaintiffs' 1st, 4th, 5th, 8th, and 14th Amendment Rights to
the United States Constitution.  Plaintiff is further informed,
and believes, and thereon alleges, that in doing as alleged in
this complaint, each defendant with deliberate indifference to
plaintiffs' personal safety and health, and without penalo-
gical justification, subjected plaintiff to unnecessary and (un)
wanton mental and emotional anguish, physical pain and
suffering and psychological injury and pain in violation of
plaintiff's Eighth Amendment Rights.

    52. At all times mentioned in this complaint, each
defendant was acting in their official capacity and within the
scope of their employment.

    53. As a direct and proximate result of all of defen-
dants actions as alleged in this complaint, plaintiff has
suffered and will continue to suffer physical and psychological
pain and injury.


    Relief continues:

    Compensatory Damages

    Award compensatory damages in the following amount:

    2. 5,000,000.00.  against defendant E. Abanico for each
of the sexual assaults that he perpetrated, and for con-
spiring and carrying out another sexual assault against
the plaintiff; And 5,000,000.00 for the physical assault;

3. 5,000,000.00. against defendant L. Rayasa for conspiring and carrying out a sexual assault on plaintiff;

4. 2,500,000.00. jointly and severally against defendants E. Abanico & L. Rayasa for harassment, excessive physical force, and retaliatory misconduct causing (un)wanton pain & suffering, resulting from the deliberate indifference to plaintiff's safety and health;

5. 3,000,000.00. against defendants A. Padilla and k. Lynch for aiding & abetting defendant Abanico in a sexual assault perpetrated against the plaintiff;

6. 1,500,000.00. jointly and severally against defendants A. Padilla and k. Lynch for the physical and psychological pain and suffering result from the deliberate indifference to plaintiffs safety and health;

7. 1,000,000.00. jointly and severally against defendants C. Noll, Pat Barker, W. cohen, J. Soares, R. Pope, A.P. Kane, James 'Jim' Tilton, Matthew B. Thomas, P. Ware, M. Dyer, and Ben Wirry for failing to protect plaintiff constitutional Rights, subjecting him to unnecessary pain and suffering, resulting from the deliberate indifference to plaintiffs safety and health;

8. 1,000,000.00. jointly and severally against defendants I. Guerra, J. Nabor, L. Rodriquez, G. Lavelle, k. Gomez, R. Shaw, B. Miller, T. Taylor, J. De la Cruz, R. Balicata, N. Garnett, P.A. Evans, M. Miranda, B. Villalobos, D.J. Carnazzo, R.G. Dennis, A. Aboytes for actively participating in the constant harassment and retaliatory misconduct, resulting from the deliberate indifference to plaintiffs safety and health;

"

- 29-

Punitive Damages

Award punitive damages in the following amounts:

9. 2,500,000.00. against defendants E. Abanico & L. Rayasa for the sexual assault(s) on plaintiff;

10. 750,000.00. jointly and severally, against defendants E. Abanico, L. Rayasa, I. Guerra, J. Nabor, L. Rodriguez, B. Lavelle, K. Gomez, R. Shaw, B. Miller, T. Taylor, J. De La Cruz, R. Balicata, N. Garrett, P.A. Evans, M. Miranda, B. Villalobos, D.J. Carnazzo, P.G. Dennis, and A. Aboytes for harassing and retaliating against the plaintiff for successfully challenging Departmental policies, and submitting complaints to prison officials;

11. 750,000.00. jointly and severally, against defendants C. Noll, Pat Barker, W. Cohen, J. Soares, R. Pope, A.P. Kane, James 'Jim' Tilton, Matthew B. Thomas, P. Ware, M. Dyer, and Ben Curry for the deliberate indifference to plaintiffs' personal safety and health;


I declare under penalty of perjury that the foregoing is true and correct.

Signed this ___29th___ day of October, 2007

Respectfully Submitted

M. Curtis M. John-Charles
CURTIS M. JOHN-CHARLES
In Pro. Per.

Section B. Continues:

Appeals coor.; Matthew B. Thomas, ombudsman; James 'Jim' Tilton, Director of corrections; A.P. Kane, Secretary-Director of corrections; R. Pope, Ass. Warden; J. Soares, Ass. Warden; W. Cohen, chief Deputy Warden; Pat Barker, chief Deputy Warden; C. Noll, chief Deputy Warden; Ben Curry, Warden CTF-Soledad. All defendants are/were employed at CTF-Soledad-central facility (except defendants: Matthew B. Thomas, James Tilton, & A.P. Kane, who plaintiff believes works at the Main office for the CDCR in Sacramento).

In the United States Court
For The Northern District of District of California

| | |
|---|---|
| Mr. Curtis M. John-Charles in the case, et al., | Order To |
| Show | |
| Plaintiff | Cause For A |
| PRELIMINARY | |
| v. | |
| And | Injunction |
| "E. Abanico" | A Temporary |
| in the case, et al., | Restraining |
| | Order |
| Defendant | Civil Action No. |

Upon the complaint, the supporting affidavits of plaintiff, and the memorandum of law submitted herewith, it is:

Ordered that defendants "E. Abanico," et al., (and any other officers working with C/O "E. Abanico" at their assign posts) show cause in room ____, of the United States courthouse, 450 Golden Gate Ave., 16 floor, San Francisco, CA 94102 on the day of ____, 200_, at ___o'clock, why a preliminary injunction should not issue pursuant to rule 65(a) of defendants, their successors in office, agents, and employees and all other persons acting in concert and participation with them, from "searching/pat downs of plaintiff person, cell/bedding area, and property; 2.) That no correctional officers at Correctional Training Facility (CTF) named inthis complaint and no correctional officers (at any other prison) in the 'CDCR' below a lieutenant be allowed to search/pat down plaintiff, his cell/bedding area, or property; 3.) That plaintiff be <u>not transferred</u> "to any prison out of California; 4.) That plaintiff be transferred no further than eighty-five (85) miles from plaintiff family & kids and/or county of resident; and 5.) That all dealings with plaintiff be video recorded, or audio recorded, (or both) and plaintiff have unlimited access to the law library and media outlets!

It is further ordered that effective immediately, and pending the hearing and determination of this order to show cause, the defendants "E. Abanico," "A. Padilla," "I. Guerra," et al., and all Correctional Training Facility Sergeants and each of their (Correctional) officers, agents, employers, and all person acting in concert or participation with them, are restrained from speaking/addressing the plaintiff without audio recording or video recording (or both); No officer named in plaintiff complaint at "CTF," and no officer below the rank of official lieutenant (and not acting lieutenant) at CTF-prison or at any other prison/facility within the CDCR, be allowed/authorize to search plaintiffs person, property, or cell/bedding area; and plaintiff be transferred to one of the many closer prison within eighty-five (85) miles of plaintiff family & kids and/or county of residents.

It IS FURTHER ORDERED that the order to show cause, and all other papers attached to this application, be served on the aforesaid by _____.

Dated: _____
United States District Judge

Case # (if applicable): _____       *October 29th*, 200 7

To:  **CLERK OF THE COURT**
      [ ] SUPERIOR COURT
      [ ] COURT OF APPEAL
      [ ] CALIFORNIA SUPREMEM COURT

                            [ ] FEDERAL DISTRICT COURT
                            [ ] FEDERAL COURT OF APPEAL
                            [ ] U.S. SUPREME COURT

FROM: *Curtis M. John-Charles*
       California State Prison CTF-Soledad
       Housing: *OW - 239*
       P.O. Box 689
       Soledad, California 93960-0689

                            CDC#: *T.56703*

Re:  [ ] PETITION FOR WRIT OF HABEAS CORPUS
      [ ] PETITION FOR REHEARING/RECONSIDERATION
      [ ] PETITION FOR REVIEW
      [ ] BRIEF ON APPEAL
      [ ] MOTION TO COURT

Case:  [ ] IN RE _____
        [ ] PEOPLE V. _____
        [ ] OTHER: _____

Dear Clerk:

    I am presently incarcerated at the California State Prison – Correctional Training Facility (CTF), in Soledad. Due to my incarceration, indigence or minimal funds, and the current policy of the California Department of Corrections as stated in Director Memorandum 15/04, I cannot provide the required number of copies as required by the Rules of Court.

    Therefore, I must respectfully request that the court make the required additional copies and to serve any required copies on other parties as necessary.

    Further, please send a conformed copy of the documents back to me as a receipt of filing. I apologize for any inconvenience that this may have caused.

                           Respectfully submitted,

                           *Mr. Curtis M. John-Charles*

## PROOF OF SERVICE BY MAIL

### BY PERSON IN STATE CUSTODY

(Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, Curtis M. John-Charles _____, declare:

I am over 18 years of age and a party to this action. I am a resident of Sacramento County, who is CURRENTLY incarcerated at Correctional Training Facility Prison,

in the county of Monterey, _____,

State of California. My prison address is: P.O. Box 689, Highway 101 North, Soledad, California, 93960 _____

On October 29th, 2007 _____,
(DATE)

I served the attached: Civil Cover Sheet; Civil Right Act 42 U.S.C.§§ 1983 complaint, an Injunction/A Temporary Restraining Order; Application to proceed In Forma Pauperis; Certificate of fund in prisoners account/balance
(DESCRIBE DOCUMENT)
on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage

thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional

institution in which I am presently confined. The envelope was addressed as follows:

Clerk of the United States District Court for the
Northern District of California,
450 Golden Gate Avenue,
    Box 36060,
San Francisco, CA 94102

I declare under penalty of perjury under the laws of the United States of America that the foregoing

is true and correct.

Executed on 10-29-07 _____        _Mr. Curtis M. John-Charles_____
(DATE)                           (DECLARANT'S SIGNATURE)

Civ-69 (Rev. 9/97)                                    ::ODMA\PCDOCS\WORDPERFECT\22832\1

Fr. Mr Luis M. John Charles, T-56703
CTF-Central, Ow-239
P.O. Box 689
Soledad, CA 93960

**LEGAL MAIL**

To: Clerk of the United States District Court
for the Northern District of California
450 Golden Gate Avenue,
Box 36060
San Francisco, CA 94102