IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CURTIS M. JOHN-CHARLES,

        Plaintiff,

   v.

E. ABANICO, et al.,

        Defendants.

_____/

No. C 07-5786 CW (PR)

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS AND MOTION
FOR SUMMARY JUDGMENT

(Docket no. 19)

On November 14, 2007, Plaintiff Curtis M. John-Charles, a state prisoner currently incarcerated at the Sierra Conservation Center, filed this pro se civil rights action under 42 U.S.C. § 1983, alleging violations of his constitutional rights when he was incarcerated at the Correctional Training Facility (CTF). On February 1, 2010, the Court found cognizable Plaintiff's Eighth Amendment sexual assault claims against Defendants CTF Correctional Officers E. Abanico and L. Ragasa,[1] as well as Plaintiff's First Amendment retaliation claims against Defendant Abanico.

Before the Court are Defendants' motion to dismiss and motion for summary judgment. Plaintiff filed his opposition.[2] Defendants did not file a reply.

For the reasons discussed below, the Court GRANTS Defendants'

_____

[1] Defendant Ragasa's name was initially misspelled as "Rayasa" in Plaintiff's original complaint and the Order of Service. However, the correct spelling is "Ragasa." (Mot. Summ. J. at 1.)

[2] Plaintiff raises additional claims in his opposition which are not relevant to the claims before the Court. If Plaintiff wishes to raise these claims, he must file a new civil rights action after he exhausts his administrative remedies.

United States District Court
For the Northern District of California

motion to dismiss and motion for summary judgment.

BACKGROUND

Plaintiff alleges in his complaint that his constitutional rights were violated on several occasions while he was incarcerated at CTF between August 18, 2006 and August 29, 2009.  The factual background below only relates to: (1) the alleged constitutional violations by Defendant Abanico, including an act of sexual assault on August 18, 2006, another act of sexual assault and retaliation on September 6, 2006, and an act of retaliation on January 25, 2007; and (2) an alleged act of sexual assault by Defendant Ragasa on July 20, 2007.

On August 18, 2006, Defendant Abanico conducted a clothed body-search of Plaintiff.  (Compl. at 3-4.; Abanico Decl. ¶ 4.) Plaintiff alleges that Defendant Abanico's actions amounted to a "sexual assault."  (Compl. at 6.)  As Plaintiff was returning from the evening meal, he was "directed by Defendant Abanico to get up against the wall."  (Id. at 4.)  As Plaintiff "waited in the search (prone) position," Defendant Abanico "kept ordering [Plaintiff] to back his legs up," until his "body was being supported only by his hands laying flat, and his forehead up against the wall."  (Id.) Defendant Abanico "beg[an] to grab and massage Plaintiff's penis and scrotum in a totally inappropriate manner, all the while attempting to place his arm in between Plaintiff's gluteus."  (Id. at 4-5.)  Defendant Abanico then "grabbed [Plaintiff's] shirt tighter, pulling the plaintiff towards him more, and continued to go up and down Plaintiff's legs, grabbing and massaging Plaintiff's penis and scrotum each time."  (Id. at 5.)  Defendant Abanico

2

United States District Court
For the Northern District of California

pulled Plaintiff's sweatpants down halfway, "to get at the sweatshorts he was wearing underneath" in order to remove Plaintiff's wallet and identification cards. (Id.)  Defendant Abanico handed the wallet and identification cards to CTF Correctional Officer K. Lynch, and "continued to fondle Plaintiff in a pretense of a search," while CTF Lieutenant A. Padilla and Officer Lynch "looked on knowingly." (Id.)  Plaintiff claims "C-Wing was called for chow release;" however, he was "order[ed] up against the wall on the opposite side of the corridor." (Id.) Once the corridor was empty of inmates, Plaintiff was searched again by Defendant Abanico "several times, grabbing and massaging plaintiff's penis and scrotum on each pass." (Id. at 5 (emphasis in original).)  Defendant Abanico "tried to place his forearm across plaintiff's shoulder in a jester [sic] that mimic [sic] an intimate relationship." (Id.)  Finally, Defendant Abanico, while "smiling," removed Plaintiff's eating utensils from the plastic bag he was carrying, and "began to rub them with the soiled gloves that he was wearing in a very overt sexual manner (i.e. simulating masturbation)." (Id. at 6.)

In support of Plaintiff's opposition, CTF inmate P. Shotwell submitted a declaration asserting under penalty of perjury that "on or about 08-18-06, at chow release from my housing unit (C-Wing)," he witnessed Defendant Abanico "stop Inmate John-Charles for a 'pat-down' search," and "grab John-Charles' testicles and attempt[] to place his hand between the crack of John-Charles' buttock." (Opp'n, Ex. 9 at PE-123.)  Inmate Shotwell adds that while Defendant Abanico "performed this aggressive procedure, he pulled

3

**United States District Court**
For the Northern District of California

John-Charles' sweat pants down below the angles [sic]," and that, after C-Wing "proceeded to chow," he searched Plaintiff for a second time, and "again attempted to grab John-Charles' testicles." (<u>Id.</u>)

In contrast, Defendant Abanico claims that he conducted the August 18, 2006 clothed body-search "in accordance with the training [he] received at the correctional academy and with his experience as a correctional officer" at CTF. (Abanico Decl. ¶ 4.) In support of Defendants' motion for summary judgment, Lieutenant Padilla, who was present during the search, attests under penalty of perjury that "Officer Abanico's clothed body-search of [Plaintiff] was thorough and professional." (Padilla Decl. ¶ 4.)

Plaintiff filed a 602 inmate appeal, identified as log no. CTF-C-06-03019, against Defendant Abanico, Lieutenant Padilla and Officer Lynch relating to the alleged August 18, 2006 "sexual assault perpetrated against Plaintiff." (Compl. at 6.) Plaintiff also sent letters to Ombudsman Matthew Thomas, CTF Warden Ben Curry, California Department of Corrections and Rehabilitation (CDCR) Director A.P. Kane and CDCR Secretary James E. Tilton regarding the alleged sexual assault incident.

Plaintiff alleges that on September 6, 2006, Defendant Abanico and Lieutenant Padilla conducted another clothed body-search of Plaintiff because they were "agitated by the initial sexual assault complaint." (Compl. at 8.) Defendant Abanico "grabbed and massage[d] Plaintiff's penis and scrotum as he proceeded to do his pat down." (<u>Id.</u>) Lieutenant Padilla did nothing to stop Defendant Abanico. Plaintiff again wrote to Ombudsman Thomas, Warden Curry,

**United States District Court**
For the Northern District of California

Director Kane and Secretary Tilton to complain about Defendant Abanico's actions on September 6, 2006.  (<u>Id.</u> at 9.)

On January 25, 2007, Defendant Abanico approached Plaintiff to conduct another clothed body-search.  (<u>Id.</u> at 13.)  Plaintiff refused to allow Defendant Abanico to search him, requesting that any staff member other than Defendant Abanico perform the search because of "on-going complaint(s) filed against [Defendant Abanico] for sexual assault during pat downs." (<u>Id.</u> at 13-14.)  CTF Sergeant M. Miranda instructed CTF Correctional Officer J. Nabor to continue the search.  Officer Nabor conducted the clothed body-search while Defendant Abanico searched Plaintiff's legal property. Plaintiff alleges that, in the process of searching his legal property, Defendant Abanico broke his eyeglasses by "bend[ing] them back and forth; all the while smiling at the plaintiff in a (what plaintiff can only describe as a sexual, pouting kind of smile), saying, 'Sir, we can all get along.'"  (<u>Id.</u> at 14.)

On January 26, 2007, Plaintiff filed a 602 inmate appeal, identified as log no. CTF-S-07-00651, alleging that Defendant Abanico broke his eyeglasses in an act of "retaliation/reprisal" in "violation of [his] first . . . Amendment right." (Young Decl., Ex. E at AGO-18.)  Plaintiff's appeal was partially granted at the first level of review, and an inquiry into the allegations was conducted.  As part of the inquiry, CTF Sergeant A. Corona inspected Plaintiff's eyeglasses and interviewed him.  Sergeant Corona stated Plaintiff told him that the "frames on [his] glasses had a screw loose," and that Plaintiff had his eyeglasses repaired by the CTF-Optometrist at no cost.  (<u>Id.</u> at AGO-20.)  Plaintiff

then appealed to the second level of review, alleging that "retaliatory actions and continued/ongoing harassment" by Defendant Abanico in the form of his broken eyeglasses had "caused an 'atypical and significant hardship.'" (Id.) Plaintiff's appeal was partially granted at the second level of review because the reviewer found sufficient the inquiry that had been conducted at the first level. Plaintiff appealed to the Director's level of review, and his appeal was denied on July 12, 2007. (Foston Decl., Ex. A at 1.)

On February 15, 2007, Plaintiff was scheduled for a program review with the Unit Classification Committee in order "to get a reduction in his custody level; as well as, a transfer to alleviate all of the retaliatory reactions, and harassment that he was experiencing whenever he was in the main corridor." (Compl. at 15.) Prior to his program review, Plaintiff had to undergo a general search. Officer Nabor asked Defendant Abanico to perform the required general search, allegedly in order to provide Defendant Abanico "another opportunity to sexually assault plaintiff." (Id.) Plaintiff refused to allow Defendant Abanico to conduct the search. Officer Nabor finally searched Plaintiff. Plaintiff's program review was conducted by CTF Captain I. Guerra as well as CTF Correctional Counselors B. Villelobos and D. J. Carnazzo. Plaintiff claims he attempted to bring to their attention "the on-going problems of harassment by various officers, along with the sexual assaults" and in support of his requests for reduction in custody and a transfer, he "submitted documents which

chronicled these events . . . ." (_Id._ at 17-18.)  Captain Guerra and Counselor Carnazzo informed Plaintiff that they had already denied his request in a "separate" 602 inmate appeal, identified as log no. CTF-S-07-00306, that "was at the third level of review." (_Id._ at 18.)

On February 21, 2007, Plaintiff mailed letters with supporting documents to Senators Machado and Ortiz as well as to Warden Curry, Director Kane and Secretary Tilton regarding the "constant harassment, reprisal, and unwarranted incidents that Plaintiff had been subjected to" after filing his sexual assault complaint against Defendant Abanico. (_Id._ at 20.)

Plaintiff alleges that on July 20, 2007, he was "sexually assault[ed]" by Defendant Ragasa. (_Id._ at 24.)  He claims that as he returned from his "evening meal," he was stopped and searched by CTF Correctional Officers J. De La Cruz and R. Balicata. (_Id._)  When the search was completed, he walked "not 20 feet" when he was stopped by Defendant Abanico, who directed Defendant Ragasa to search Plaintiff. (_Id._)  Plaintiff informed Defendant Ragasa he had "just been searched by" Officers De La Cruz and Balicata. (_Id._)  Defendant Ragasa, after looking "to [D]efendant Abanico for approval and direction," indicated that he had not seen the officers search Plaintiff. (_Id._)  Defendant Ragasa then "proceeded to pat Plaintiff down while Defendant Abanico watched." (_Id._)  He "repeatly [sic] grabbed hold of Plaintiff's penis and scrotum in a very inappropriate manner" as "Defendant Abanico looked on approvingly." (_Id._)  Plaintiff alleges he then immediately informed CTF Sergeant G. Elliot of the "sexual assault that just

happen[ed]," and the "continuous persecution and harassment that he is being forced to endure" by Sergeant Elliot's officers.  (<u>Id.</u> at 24-25.)  On July 21, 2007, Plaintiff submitted a 602 inmate appeal, identified as log no. CTF-C-07-03008, against Defendants Abanico and Ragasa for the alleged sexual assault.  (Opp'n, Ex. J at PE-54.)

Plaintiff filed this action on November 14, 2007.

DISCUSSION

I.   Motion to Dismiss

A.   Legal Standard

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The PLRA's exhaustion requirement is therefore mandatory, and no longer left to the discretion of the district court.  <u>Woodford v. Ngo</u>, 548 U.S. 81, 85 (2006) (citing <u>Booth v. Churner</u>, 532 U.S. 731, 739 (2001)).

The PLRA's exhaustion requirement requires "proper exhaustion" of administrative remedies.  <u>Woodford,</u> 548 U.S. at 93.  This means "[p]risoners must now exhaust all 'available' remedies" (<u>id.</u> at 85) in "compliance with an agency's deadlines and other critical procedural rules."  <u>Id.</u> at 90-91.  The requirement cannot be satisfied "by filing an untimely or otherwise procedurally

United States District Court
For the Northern District of California

defective administrative grievance or appeal." Id.  Further, the remedies "available" need not meet federal standards, nor need they be "plain, speedy and effective." Porter v. Nussle, 534 U.S. 516, 524 (2002); Booth, 532 U.S. at 739-40 & n.5.  Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is still a prerequisite to suit. Woodford, 548 U.S. at 85-86 (citing Booth, 532 U.S. at 734); see also Morton v. Hall, 599 F.3d 942, 945 (9th Cir. 2010).

An action must be dismissed if the prisoner did not exhaust all available administrative remedies before he filed suit -- even if the prisoner fully exhausts all available administrative remedies while the suit is pending.  McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002); see also Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006) (where administrative remedies are not exhausted before the prisoner sends his complaint to the court, it will be dismissed even if exhaustion is completed by the time the complaint is actually filed).

It is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.  Jones v. Bock, 549 U.S. 199, 218 (2007).  The CDCR provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare."  Cal. Code Regs. Tit. 15, § 3084.1(a).  The CDCR also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers.  See id. § 3084.1(e).  In order to exhaust all available administrative remedies within this system, a prisoner must submit

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

his complaint as a 602 inmate appeal and proceed through several levels of appeal: (1) informal level grievance filed directly with any correctional staff member; (2) first formal level appeal filed with one of the institution's appeal coordinators; (3) second formal level appeal filed with the institution head or designee; and (4) third formal level appeal filed with the CDCR director or designee. Id. § 3084.5; Brodheim v. Cry, 584 F.3d 1262, 1264-65 (9th Cir. 2009); Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997). This satisfies the administrative remedies exhaustion requirement under § 1997e(a). Barry, 985 F. Supp. at 1237-38.

Non-exhaustion under § 1997e(a) is an affirmative defense which should be brought by Defendants in an unenumerated motion to dismiss under Federal Rule of Civil Procedure 12(b). Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).

B.   Analysis

In the present case, Defendants correctly raise non-exhaustion in an unenumerated motion to dismiss. Defendants acknowledge that Plaintiff exhausted all available administrative remedies for the August 18, 2006 Eighth Amendment claim and the January 25, 2007 First Amendment claim, both against Defendant Abanico. Defendants argue that Plaintiff did not exhaust the following claims: (1) the September 6, 2006 First and Eighth Amendment claims against Defendant Abanico; (2) the July 20, 2007 Eighth Amendment claim against Defendant Ragasa; and (3) the August 29, 2007 Eighth Amendment claim against Defendant Abanico.[3]

---

[3] On February 1, 2010, the Court dismissed Plaintiff's Eighth Amendment claim against Defendant Abanico for failure to state a claim for relief. Therefore, the Court need not address

10

United States District Court
For the Northern District of California

1.    September 6, 2006 First and Eighth Amendment Claims
      Against Defendant Abanico

Plaintiff claims that, following the alleged sexual assault during the September 6, 2006 clothed body-search, he was "forced" to bring this incident to the attention of Ombudsman Thomas, Warden Curry, Director Kane and Secretary Tilton. (Compl. at 9.) However, as mentioned above, the correct avenue to exhaust his administrative remedies is by filing a 602 inmate appeal. The record shows he did not do so. Nor did he mention this incident in his previously-filed 602 inmate appeal, identified as log no. CTF-C-06-03019. Plaintiff has therefore failed to properly exhaust administrative remedies for his September 6, 2006 First and Eighth Amendment claims against Defendant Abanico. Accordingly, Defendants' motion to dismiss is GRANTED, without prejudice, as to these claims.

2.    July 20, 2007 Eighth Amendment Claim Against
      Defendant Ragasa

Plaintiff claims he attempted twice to pursue this claim to the Director's level of review, but his attempts were "circumvented" because the Inmate Appeals Branch (IAB) sent him letters rejecting the appeal. (Opp'n at 12.) Plaintiff argues he exhausted his administrative remedies as to this claim because the IAB had notice of the alleged "misconduct." (Id. at 12-13.)

On July 21, 2007, the day after the alleged sexual assault by Defendant Ragasa, Plaintiff submitted a 602 inmate appeal, identified as log no. CTF-C-07-03008, against Defendants Abanico and Ragasa. (Opp'n, Ex. J at PE-54.) The appeal was received by

_____

Defendants' argument relating to this claim.

11

the first level of review on August 9, 2007.  The first level of review "partially granted" Plaintiff's 602 inmate appeal, in that an inquiry into his allegations would be conducted.  (Id. at PE-60.)  The first level of review response was returned to Plaintiff on September 19, 2007 indicating that "a request for administrative action regarding staff . . . [wa]s beyond the scope of staff complaint process;" however, "allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process."  (Id.)  The response further explained that in order for Plaintiff to properly exhaust administrative remedies, he must submit an appeal "through all levels of appeal review up to, and including, the Director's Level of Review." (Id.)  Plaintiff was dissatisfied with the first level of review response.  On September 27, 2007, he submitted his appeal to the second level of review.  On October 1, 2007, the IAB received Plaintiff's appeal to the second level of review.  Plaintiff's appeal was processed as "a staff complaint appeal inquiry," rather than as a "referr[al] to the Office of Internal Affairs."  (Id. at PE-58.)  The second level of review "partially granted" the appeal, reiterating that an investigation into the misconduct had been conducted, and "a request for administrative action regarding staff . . . is beyond the scope of the staff complaint process." (Id.)  The record is ambiguous regarding the date Plaintiff received the second level of review response.  The response itself was dated October 22, 2007, and it was signed October 24, 2007. (Id.)  A time stamp on the 602 inmate appeal indicates the response was returned to Plaintiff on October 25, 2007.  (Id. at PE-54.)

12

**United States District Court**
For the Northern District of California

However, Plaintiff alleged that he did not receive the response on October 25, 2007.

The deadline to file his appeal at the Director's level of review allegedly passed on October 30, 2007. (Opp'n, Ex. J at PE-54.; <u>see also</u> Opp'n, Ex. N at PE-78.) Plaintiff, purportedly not having received the second level of review response, filed a "request for interview" with CTF Correctional Officer M. Evans on November 11, 2007, seeking assistance to "retrieve appeal log no. CTF-C-07-03008," which "the appeals office ha[d] yet to return to [him]." (Opp'n, Ex. J at PE-54.) On November 13, 2007, Officer Evans responded to Plaintiff, indicating he did "not have access to the appeal," but that he had "forwarded [Plaintiff's] comments to the Appeals Coordinator." (<u>Id.</u>) Instead of submitting his appeal to the Director's level of review, Petitioner filed the present federal action on November 14, 2007. Twenty-one days later, on December 5, 2007, he filed his appeal to the Director's level of review, alleging that he had just received the second level of review response on that date. (<u>Id.</u>) A note in the bottom left-hand corner of the 602 inmate appeal, signed by "the O-Wing floor Officer" also indicates Plaintiff received the second level of review response "thru Mail CTR on 12/5/07." (<u>Id.</u>; <u>see also</u> Opp'n, Ex. J at PE-57.)

On February 10, 2008, the IAB "screened-out" and "returned" to Plaintiff his appeal "pursuant to CCR 3084.3," because it did not comply with the requirement that an appellant "submit the appeal within 15 working days of . . . receiving a lower level decision in accordance with CCR 3084.6(c)." (<u>Id.</u> at PE-57.) On February 22,

13

**United States District Court**
For the Northern District of California

2008, Plaintiff responded to the IAB screening with a note stating, "the 15-day rule does not apply to me" because "it was the J. Soars [sic] and/or FC-C. Noll who did not get this document back to me in time." (Id.)  He indicated, "I made sure I had the O-Wing floor Officer note & sign when I was issued back this complaint (as highlighted on the left bottom of this complaint)." (Id.)  On April 16, 2008, the IAB responded to Plaintiff with another letter directing him to "provide substantiation to [his] claim that [he] received this appeal from the Second Level of Review on December 5, 2007." (Id.)  The record contains no further documentation of further correspondence between Plaintiff and the IAB.

The Court finds that Plaintiff has failed to demonstrate that he has exhausted his administrative remedies with respect to his July 20, 2007 Eighth Amendment claim against Defendant Ragasa prior to filing this suit.  Even accepting Plaintiff's allegations as true, he failed to complete the administrative review process in accordance with CTF's applicable procedural rules.  Even assuming that Plaintiff's 602 inmate appeal log no. CTF-C-07-03008 was received and did satisfy the requirements up to the second level of review, Plaintiff does not establish that he exhausted the final level of review applicable to his claim prior to filing suit. Plaintiff admits that after receiving no response to his appeal to the second level of review, he filed the present action.  When he finally received the response at the second level of review twenty-one days after he filed this suit, he proceeded to continue his appeal to the Director's level of review.  Because Plaintiff filed this federal action before exhausting all available remedies with

14

**United States District Court**
For the Northern District of California

respect to the July 20, 2007 Eighth Amendment sexual assault claim
against Defendant Ragasa, he has not fulfilled the exhaustion
requirement.   The Court finds unavailing Plaintiff's allegations
that he attempted to appeal to the Director's level of review after
he filed this action because dismissal is warranted even if he
fully exhausted all available administrative remedies while the
suit was pending.   See McKinney, 311 F.3d at 1199.   Accordingly,
Defendants' motion to dismiss is also GRANTED, without prejudice,
as to this claim.

II.   Motion for Summary Judgment

    A.   Legal Standard

    Summary judgment is properly granted when no genuine and
disputed issues of material fact remain, and when, viewing the
evidence most favorably to the non-moving party, the movant is
clearly entitled to prevail as a matter of law.   Fed. R. Civ. P.
56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);
Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir.
1987).   Material facts which would preclude entry of summary
judgment are those which, under applicable substantive law, may
affect the outcome of the case.   The substantive law will identify
which facts are material.   Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986).

    The moving party bears the burden of showing that there is no
material factual dispute.   Therefore, the Court must regard as true
the opposing party's evidence, as long as it is supported by
affidavits or other evidentiary material.   Celotex, 477 U.S. at
324; Eisenberg, 815 F.2d at 1289.   The Court must draw all

United States District Court
For the Northern District of California

reasonable inferences in favor of the party against whom summary judgment is sought.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Acc. & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).  If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Nissan, 210 F.3d at 1106; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation.  Nissan, 210

16

United States District Court
For the Northern District of California

F.3d at 1105.  If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists.  <u>Id.</u> If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition.  <u>Id.</u> This is true even where the non-moving party bears the ultimate burden of persuasion at trial.  <u>Id.</u> at 1107.

B.   Evidence Considered

A district court may only consider admissible evidence in ruling on a motion for summary judgment.  <u>See</u> Fed. R. Civ. P. 56(e); <u>Orr v. Bank of America</u>, 285 F.3d 764, 773 (9th Cir. 2002). In support of their motion for summary judgment, Defendants have submitted declarations by Defendant Abanico, Lieutenant Padilla, CTF Chief D. Foston, CTF Litigation Coordinator T. Lewis, CTF Correctional Counselor J. Keefer, and Deputy Attorney General C. Young (docket nos. 20, 21, 22, 23, 24, 25).  On January 13, 2011, the Court directed Defendant Abanico to produce additional documents relevant to Defendants' motion for summary judgment.  On January 20, 2011, Defendant Abanico responded to the Court's January 13, 2011 Order, and CTF Lieutenant K. Hoffman filed a declaration relevant to Defendants' motion for summary judgment. On January 26, 2011, the Court again directed Defendant Abanico to produce additional documents relevant to Defendants' motion for summary judgment.  On February 2, 2011, Defendant Abanico responded to the Court's January 26, 2011 Order, and CTF Academy Administrator M. Beaber filed a declaration in support of

17

United States District Court
For the Northern District of California

Defendants' motion for summary judgment.

Plaintiff verified his complaint filed on November 14, 2007 by signing it under penalty of perjury.  Also in the record is Plaintiff's opposition, which is not signed under penalty of perjury.  However, the eight attached declarations by CTF inmates D. Laurels, M. Estrada, R. Fryer, L. Martin, K. Trask, E. Lewis, L. Toney, and P. Shotwell are signed under penalty of perjury.

C.   Analysis

1.   August 18, 2006 Eighth Amendment Claim Against Defendant Abanico

Sexual assault, coercion and harassment may violate contemporary standards of decency and cause physical and psychological harm.  See Jordan v. Gardner, 986 F.2d 1521, 1525-31 (9th Cir. 1993) (en banc).  However, not every malevolent touch by a prison guard or official gives rise to an Eighth Amendment violation.  The Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of force.  See Hudson v. McMillian, 503 U.S. 1, 9-10 (1992); Berryhill v. Schriro, 137 F.3d 1073, 1076 (8th Cir. 1998)(no Eighth Amendment violation where employees briefly touched inmate's buttocks with apparent intent to embarrass him, and touching was unaccompanied by any sexual comments or banter).  Also, mere verbal sexual harassment does not necessarily amount to an Eighth Amendment violation.  Austin v. Terhune, 367 F.3d 1167, 1171-72 (9th Cir. 2004) (upholding summary judgment of Eighth Amendment claim where prison guard exposed himself to prisoner in elevated, glass-enclosed control booth for no more than 30-40

18

seconds).

A prisoner therefore must establish that the alleged sexual harassment was egregious, pervasive and/or widespread in order to state a claim under the Eighth Amendment.  See e.g., Jordan, 986 F.2d at 1525-31 (prison policy requiring male guards to conduct body searches on female prisoners); Watson v. Jones, 980 F.2d 1165, 1165-66 (8th Cir. 1992) (correctional officer sexually harassed two inmates on almost daily basis for two months by conducting deliberate examination of genitalia and anus).

Plaintiff alleges that on August 18, 2006, Defendant Abanico conducted a clothed body-search which violated his Eighth Amendment right because it amounted to a "sexual assault."  (Compl. at 3.) Meanwhile, Defendant Abanico alleges that he conducted the clothed body-search in accordance with the training he received at the correctional academy and with his experience as a correctional officer at CTF.  (Abanico Decl. ¶ 4.)

Based on the record, a finder of fact could reasonably conclude that Defendant Abanico's actions constituted a sexual assault in violation of Plaintiff's Eighth Amendment right.  To grant summary judgment for Defendants, the Court would have to accept Defendant Abanico's version of events while rejecting Plaintiff's.  However, the Court cannot make credibility determinations in connection with a summary judgment motion.  Thus, viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has established a "genuine issue for trial" concerning the August 18, 2006 Eighth Amendment claim against Defendant Abanico.  Celotex, 477 U.S. at 324 (quoting Fed.

1   R. Civ. P. 56(e)).

2           2.   Defendant Abanico's Qualified Immunity Defense to
                 August 18, 2006 Eighth Amendment Claim
3

4        The defense of qualified immunity protects "government

5   officials performing discretionary functions . . . from liability

6   for civil damages insofar as their conduct does not violate clearly

7   established statutory or constitutional rights of which a

8   reasonable person would have known." Harlow v. Fitzgerald, 457

9   U.S. 800, 818 (1982). A court considering a claim of qualified

10  immunity must determine (1) whether the plaintiff has alleged the

11  deprivation of an actual constitutional right and (2) whether such

12  right was clearly established such that it would be clear to a

13  reasonable officer that his conduct was unlawful in the situation

14  he confronted. See Pearson v. Callahan, 555 U.S. 223, 129 S. Ct.

15  808, 818 (2009) (citing Saucier v. Katz, 533 U.S. 194 (2001)). The

16  court may exercise its discretion in deciding which prong to

17  address first, in light of the particular circumstances of each

18  case. Id.

19       Regarding the first prong, the threshold question must be:

20  taken in the light most favorable to the party asserting the

21  injury, do the facts alleged show the officer's conduct violated a

22  constitutional right? Saucier, 533 U.S. at 201. Regarding the

23  second prong, the inquiry of whether a constitutional right was

24  clearly established must be undertaken in light of the specific

25  context of the case, not as a broad general proposition. Id. at

26  202. The relevant, dispositive inquiry in determining whether a

27  right is clearly established is whether it would be clear to a

28

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

reasonable officer that his conduct was unlawful in the situation he confronted.  Id.  Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation.  Id. (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

A police department's training manual may be relevant to determining whether reasonable officers would have been on notice that conduct was not lawful.  See Drummond v. City of Anaheim, 343 F.3d 1052, 1059, 1061-62 (9th Cir. 2003) (using police department training bulletin warning officers that kneeling on a subject's back or neck could result in compression asphyxia and death as evidence that the force used was unreasonable and that a reasonable officer would have known it).

Defendant Abanico claims he is entitled to qualified immunity as to Plaintiff's Eighth Amendment claim because "it would not have been clear" to a reasonable officer that "following contraband search protocols by touching an inmate's genitals would have violated the Constitution."  (Mot. Summ. J. at 17.)

California Code of Regulations, Title 15, section 3287(b) provides that "random or spot-check inspections of inmates may . . . be authorized by the institution head to prevent possession and movement of unauthorized or dangerous items and substances into, out of, or within the institution."  (Hoffman Decl., Ex. A at 3.)  "All such inspections shall be conducted in a professional manner which avoids embarrassment or indignity to the inmate."  (Id.)  The CDCR Departmental Operations Manual, Article 19, Section 52050 provides that "custody post orders shall require

21

random clothed body searches of inmates, or when reasonable suspicion is established.  Random search should be no more frequent than necessary to control contraband or to recover missing or stolen property; however, the routine search of inmates entering or leaving certain specified areas is not precluded."  (Hoffman Decl., Ex. B at 4.)  Lieutenant Hoffman declares under penalty of perjury that "there are no Operational Procedures at the Correctional Training Facility addressing clothed body searches that supplement the California Code of Regulations and Department Operations Manual."  (Hoffman Decl. ¶ 5.)

The Correctional Training Center "trains cadets in the techniques and skills associated with" clothed body-searches.  (Id.)  The Correctional Training Center "Body, Cell, Area, and Grid Search Instructor's Guide" establishes procedures for a "systematic" clothed body-search.  (Id., Ex. C at 32.)  According to Academy Administrator Beaber's declaration dated January 28, 2011, the Instructor's Guide has been "in effect from December 10, 2003 to the present, including during the period when Officer Abanico was trained at the Academy."  (Beaber Decl. ¶ 4.)  The "Instructor's Guide" directs the officer to "check the inmate's left groin, hip and buttock" in the following manner: "Using the palm side of your hand check the hip area and high into the left groin area.  Your left hand simultaneously searches the left rear hip and buttock area.  Using a firm touch continue searching down the left leg to the foot."  (Hoffman Decl., Ex. C at 36.)  The officer then repeats this procedure for the inmate's right side. While searching an inmate's groin, the officer is also directed to

22

United States District Court
For the Northern District of California

"cup the groin to check for contraband." (Id. at 37.) The corresponding 2006 "Body, Cell, Area, and Grid Search Student Workbook" repeats verbatim this "systematic" procedure. (Hoffman Decl., Ex. D at 16.)[4]

The first prong of Saucier, 533 U.S. at 201, asks "whether the plaintiff has alleged the deprivation of an actual constitutional right." The Court has already determined that, based on the record, a finder of fact could reasonably conclude that Defendant Abanico's actions constituted a sexual assault in violation of Plaintiff's Eighth Amendment right. The second prong of Saucier, 533 U.S. at 202, asks "whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." As quoted above, the CDCR Departmental Operations Manual and the "Instructor's Guide" described how to conduct a "systematic" clothed body-search for weapons and other contraband, including touching the subject's genitals. Such manuals are relevant to determining whether reasonable officers would have been on notice that such conduct was not lawful. See Drummond, 343 F.3d at 1059. Defendant Abanico's intrusive search could be viewed as consistent with the instruction that he received. Plaintiff cites no case law, and the Court is aware of none, indicating that such a

---

[4] Defendant Abanico claims under penalty of perjury that he participated in "on-the-job training for clothed body-searches" on October 3, 2006 which "reinforced [his] techniques for conducting clothed body-searches, including searching inmates' groins for contraband such as weapons, drugs or other contraband." (Abanico Decl. ¶ 5.) Defendant Abanico's log shows that on October 3, 2006, he participated in an on-the-job training course entitled "Body Searches/ HCSD" for one hour. (Hoffman Decl., Ex. D at 2.)

23

United States District Court
For the Northern District of California

thorough search is unconstitutional.  Under the second prong of
Saucier, therefore, it would not be clear to a reasonable officer
that following established contraband search protocols by touching
an inmate's genitals would have violated Plaintiff's Eighth
Amendment rights.  Because a reasonable officer in Defendant
Abanico's position could have thought his conduct was lawful, he is
entitled to qualified immunity as to Plaintiff's August 18, 2006
Eighth Amendment claim.  Accordingly, Defendants' motion for
summary judgment is GRANTED as to this claim.

> 3.   January 25, 2007 First Amendment Claim Against
>      Defendant Abanico

Prisoners have First Amendment rights to file prison
grievances, and to pursue civil rights litigation in the courts.
Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005).  Without
these constitutional guarantees, "inmates would be left with no
viable mechanism to remedy prison injustices."  Id.  Because
"purely retaliatory actions taken against a prisoner for having
exercised those rights necessarily undermine those protections,
such actions violate the Constitution quite apart from any
underlying misconduct they are designed to shield."  Id. (citing,
e.g., Pratt v. Rowland, 65 F.3d 802, 806 & n.4 (9th Cir. 1995)
("[T]he prohibition against retaliatory punishment is 'clearly
established law' in the Ninth Circuit, for qualified immunity
purposes.")).

Retaliation by a state actor for a prisoner's exercise of a
constitutional right is actionable under 42 U.S.C. § 1983, even if
the act, when taken for different reasons, would have been proper.
See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S.

24

**United States District Court**

For the Northern District of California

274, 283-84 (1977).  Retaliation, though it is not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights.  See Perry v. Sindermann, 408 U.S. 593, 597 (1972).  Within the "prison context," a "viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes, 408 F.3d at 567-68 (footnote omitted).  Accordingly, a prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline.  See Pratt, 65 F.3d at 806.

While the prisoner must allege a defendant's actions caused him some injury, Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), the prisoner need not demonstrate a total chilling of his First Amendment rights in order to establish a retaliation claim. See Rhodes, 408 F.3d at 568-69 (rejecting argument that inmate did not state a claim for relief because he had been able to file inmate grievances and a lawsuit).  That a prisoner's First Amendment rights were chilled, though not necessarily silenced, is enough.  Id. at 569 (destruction of inmate's property and assaults on the inmate enough to chill inmate's First Amendment rights and

state retaliation claim, even if inmate filed grievances and a lawsuit).

The prisoner bears the burden of pleading and proving absence of legitimate correctional goals for the conduct of which he complains. <u>Pratt</u>, 65 F.3d at 806. At that point, the burden shifts to the prison official to show, by a preponderance of the evidence, that the retaliatory action was narrowly tailored to serve a legitimate penological purpose. <u>See</u> <u>Schroeder v. McDonald</u>, 55 F.3d 454, 461-62 (9th Cir. 1995) (defendants had qualified immunity for their decision to transfer prisoner to preserve internal order and discipline and maintain institutional security).

Retaliatory motive may be shown by the timing of the allegedly retaliatory act and inconsistency with previous actions, as well as direct evidence. <u>Bruce v. Ylst</u>, 351 F.3d 1283, 1288-89 (9th Cir. 2003). However, retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" <u>Pratt</u>, 65 F.3d at 807 (quoting <u>Sandin v. Conner</u>, 515 U.S. 472, 482 (1995)). In particular, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." <u>Id.</u>

Plaintiff alleges that on January 25, 2007, Defendant Abanico broke his eyeglasses while searching his property. Plaintiff claims this was an act of retaliation for the complaints of sexual assault he made against Defendant Abanico. Defendant Abanico

alleges that "the extent of damage to Plaintiff's eyeglasses appears to be merely a loose screw, according to Plaintiff's inmate appeal on this issue." (Mot. Summ. J. at 15.) Defendant Abanico claims that this "slight amount of damage, even if done intentionally, does not constitute an adverse action for purposes of stating a retaliation claim, nor would a person of ordinary firmness be chilled from exercising their First Amendment rights in the future." (Id.)

    Here, Plaintiff alleges that Defendant Abanico retaliated against him for filing inmate grievances. Specifically, Plaintiff argues that a retaliatory motive can be inferred on the part of Defendant Abanico for allegedly breaking his eyeglasses when he "started to bend them back and forth." (Compl. at 14.) As discussed above, Defendants claim that Plaintiff told Sergeant Corona the frames on his eyeglasses had a "screw loose." (Young Decl., Ex. E at AGO-20.) Defendants also claim, and Plaintiff does not refute, that the CTF-Optometrist repaired Plaintiff's eyeglasses at no cost. Even if Plaintiff's eyeglasses were damaged by Defendant Abanico, his temporary inability to use his eyeglasses until they were repaired would not dissuade a person of reasonable firmness from exercising his or her right to free speech. Consequently, Plaintiff has not established a "genuine issue for trial" concerning the alleged retaliation claim. Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). Accordingly, Defendants' motion for summary judgment is GRANTED as to this claim.

                                CONCLUSION

    For the foregoing reasons,

27

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1.    Defendants' Motion to Dismiss (docket no. 19) is GRANTED. Plaintiff's September 6, 2006 First and Eighth Amendment claims against Defendant Abanico and his July 20, 2007 Eighth Amendment claim against Defendant Ragasa are DISMISSED WITHOUT PREJUDICE for failure to exhaust.  Plaintiff may refile these claims if he is able to exhaust his administrative remedies in compliance with Title 15 of the California Code of Regulations § 3084.

2.    Defendants' Motion for Summary Judgment (docket no. 19) is GRANTED as to Plaintiff's August 18, 2006 Eighth Amendment claim and January 25, 2007 First Amendment claim, both against Defendant Abanico.

3.    The Clerk of the Court shall enter judgment in favor of Defendant Abanico, and dismiss without prejudice the claims against Defendant Ragasa, in accordance with this Order, terminate all pending motions, and close the case.  Each party shall bear his own costs.

4.    This Order terminates Docket no. 19.

IT IS SO ORDERED.

DATED: 2/23/2011

_Claudia Wilken_
_____
CLAUDIA WILKEN
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

1
2
3
4

JOHN-CHARLES et al,

5                                                    Case Number: CV07-05786 CW

6               Plaintiff,

7                                                    **CERTIFICATE OF SERVICE**

        v.

8

9  ABANICO et al,

10

11              Defendant.

_____/

12

13  I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
Court, Northern District of California.

14

15  That on February 23, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said
copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle

16  located in the Clerk's office.

17

18

19  Curtis M. John-Charles T-56703

20  Sierra Conservation Center

21  5100 O'Byrnes Ferry Road

P.O. Box 497

22  Jamestown,  CA 95327-0497

23

24  Dated: February 23, 2011

Richard W. Wieking, Clerk

25  By: Nikki Riley, Deputy Clerk

26

27

28

**United States District Court**
For the Northern District of California